We'll call the next case the United States of America v. Michonne Onque and the United States of America v. Nancy Wolf-Fells. Mr. Donahue. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the Court. Keith Donahue for Appellant Nancy Wolf-Fells. Also at Appellant's table is Anne Singer representing Michonne Onque. I'd request to reserve three minutes of my time, if I may. That request will be granted. Thank you, Your Honor. In this case, the government alleged that my client participated in a massive mortgage fraud. It charged her with joining with 16 other people in a single conspiracy. But when all the evidence came in, it turned out there was no such conspiracy. And if the jury could properly find Ms. Wolf-Fells guilty of anything at all, it was a much smaller offense. And that smaller offense, the evidence of it, such as it was, was easily overshadowed by evidence of what turned out to be other conspiracies that had been erroneously lumped together in the indictment. So this is, of course, what's called a variance between the charge in the indictment and the evidence at trial. And when we have such a variance, the danger is that the jury will fail to separate offenses and offenders. And it's too easy for the jury to transfer guilt from one alleged co-schemer to another. The variance, of course, has to be prejudicial, does it not? Yes, Your Honor. Okay. Now, as it turned out, although your client was indicted with, I believe, there were 13 people originally indicted, there were only three people that went to trial, correct? Well, I think there were 16 other people named as co-conspirators in her indictment, but yes, only three went to trial. Only three went to trial. The Enquies and your client were the ones who went to trial, correct? Correct. So the evidence that was presented was evidence involving the Enquies, both Dwayne and Mae Sean. Well, I think actually the evidence that was presented, when you step back and look at it, it was as if it wasn't these co-defendants on trial, but really the four men in what was called the think tank. Now, these were all people who had pled guilty, but it took 25 witnesses over 10 days of trial, and the prosecutor's argument begins with that think tank. I'd refer the court to page 245 of the appendix. Virtually the first words of the assistant United States attorney are, in 2006, Nick Tarsha, Daryl Henry, Tim Ricks, and Jerry Smith got together and agreed to commit mortgage fraud. So it's not even referring to the defendants in this case. The question I have is, why isn't this like any other multi-level, I'm sorry, multi-level, multi-defendant conspiracy, where, you know, the prosecutor has, well, I was going to say the prosecutor has no control, I mean some control over who pleads out when, but at the end of the day, when it comes to who's there at trial, you have to prove the entire series of conspiracies, whatever their extent are, whoever's involved, and the majority of the evidence may, in fact, not be with regard to the defendants that are before the jury. It might be other ones who have pled. I mean, that's true of any charged conspiracy here, Newark, or in any other federal courthouse. So what is so unique about this charged conspiracy that we should deem that it's a variance? Well, I think what's unique is that there simply was no evidence at all from which you could infer that single conspiracy charged in the indictment. But the cases were tried. It was tried as if it was enough to show that the think tank, the four men alleged to have been part of that think tank, that they were involved in all of the activity. That was the way the case came in, that that would suffice to show the conspiracy, and lots of evidence was put on that was primarily about those co-conspirators who were not on trial. So I think... Well, for instance, Darryl Henry, Darryl Henry was part of the think tank, right? A jury could find that, yes. Okay. And Darryl Henry pled guilty, but Darryl Henry, most importantly for your client, testified against your client. Now how would you drop Darryl Henry into this case without giving some background about how Darryl Henry got here? There might be some background about how Darryl Henry got here, but he wasn't presented in terms of what Nancy Wolfe Fells could have seen in terms of what activity she was joining. So if the case had focused on Darryl Henry properly as regards Nancy Wolfe Fells, we might never have heard about a think tank. What we would have heard about is Darryl Henry being her main connection, and then Darryl Henry referring a guy named Tim Ricks to her, who she barely knew, and Darryl Henry having a lackey named Jerry Smith, who she never met in person. And so it would have been a different case. We would have been looking at what commitment Nancy Wolfe Fells made, if any, to join a legal activity, and it could only have been to join a much smaller conspiracy. Let me ask you this question, which follows up on Judge Fischer's question. If you had a multilevel conspiracy that you've charged four people at the top, three people, and two people at the bottom, and the only people on trial are the two people on the bottom, you're going to put in evidence, and there's nothing that federal law says that's counter to this. You can put in evidence on the top four co-conspirators, the middle three in my hypothetical, the middle three co-conspirators, and the two people at the end. And the quantum of proof with regard to the top two levels in my hypothetical could be 95% of the evidence. And there would be nothing that would be violative of federal law if that were the quantum of proof and the manner of proof that you put in. So I'm trying to figure out your variance argument using that sort of as a base or foundation. I don't know if I could agree that it would be 95% of the proof, but the critical problem, that might all be well and good if the government proved up a connection between the spokes. That's what's essential to show the single conspiracy in the indictment. So maybe you would focus on the activity of the so-called hub, the person or persons who are in the center of all the activity alleged in the indictment. But if you're going to make that the center of your case, as it were, you've got to prove up that each of the defendants were aware of the similarly situated persons. In considering that, we have to look, too, at the stage that this litigation is in, that the jury has come back with a verdict. And when we consider the facts, we have to consider the facts in the light supporting the government's position, that who Nancy Felswold may have known and may have interacted with, we've got to look at that, not you trying to persuade the jury that she didn't know these people at all, but both sides of evidence coming in and what the jury determined. I allow that the standard is deferential, Your Honor, but there was no evidence of the critical question of whether Nancy Wolf Fels and the co-defendants and the people alleged to occupy the other spokes, that they had any awareness of the scope of the think tank's activities. You talked about the rim, so to speak, that Nancy Wolf Fels had to know about others and what others were doing on the rim. Clearly, the evidence indicated that she had this one individual, Mr. Larkin, who was buying four properties at the same time. And there was certainly testimony that she knew that she couldn't submit those to the same, as a mortgage broker, she couldn't submit those to the same lender. And she knew she had to farm them out, the so-called stacking of these loans. Isn't that enough to show she knew that there were other people involved in this, that she could get to do the actual financing? No, Your Honor. You're making an argument, but I'm not sure the argument applies to the facts of your defendant's case. Let me talk about the very few facts on that point, which is the sole argument on which the government rests its case. So the name of that person, I believe, is Larry Barker. Barker. And that's somebody that Daryl Henry... Excuse me, I was looking for Barker. Right. I was close. So here's what Daryl Henry said about Larry Barker. He said, at the beginning, he wanted, at the time, to get four loans. But that's exactly what he talked with Nancy Wilfels about, how many loans could she get. That's at page 773 of the appendix. And as it turns out, she can only get three. She does two herself, and her employer prefers a third. He said, as far as that fourth loan, she had nothing to do with it. He found out about the broker who did that loan from Nick Tarja and Tim Ricks. I thought she referred that to Gil Siegel. That's the third loan. So we're allowing that the jury could find she had a hand in three of the loans, including the one referred to Gil Siegel. But Gil Siegel is not a co-conspirator. He's not alleged to be part of this large case. But he was with Coase Mortgage. Right. And wasn't Debra Hansen also with Coase Mortgage? No. No, Debra Hansen wasn't with Coase Mortgage. The name of the mortgage company she's with is in the indictment. I can't recall it off the top of my head. But Coase Mortgage is just – Gil Siegel is actually called and treated as a person who can speak to proper lending practices. He's not alleged to have been in on the conspiracy. So if anything, the fact that Nancy Wilfels or her employer referred a loan to Gil Siegel shows she does not have a connection with the brokers who are actually in on the conspiracy. She doesn't even know those people. There's interesting testimony in that regard from Timothy Ricks. He actually says, not of Nancy Wilfels, but he says of Daryl Henry himself, that the only thing Daryl Henry did was with Mortgage Now, was with Nancy Wilfels. That's page 1321. So Daryl Henry just didn't know other brokers. There's no basis to infer that he ever alerted in any way Nancy Wilfels that any other brokers were involved. And Gil Siegel was not a co-conspirator. He can't count. All right. We'll have you back on rebuttal. Thank you, Your Honors. Ms. Singer? Thank you, Your Honor. May it please the Court. My name is Ann Singer, and I represent Nishan Anquay. I want to, and I'd like to reserve two minutes for rebuttal, please. Request to be granted. Thank you. I would first like to address briefly the variance argument before I get to the Rule 404B argument. I just want to point out what the Supreme Court has said about cases like this in which there was clearly, it seems, a variance between the single conspiracy charged and the multiple conspiracies proved. The Supreme Court in Blumenthal, which is describing the Kodiakus case, says, describing Kodiakus, which, of course, is the original case, which talks about hub-and-spoke conspiracies and variances, says, apart from the much larger number of agreements there involved, no two of those agreements were tied together as stages in the formation of a large, all-inclusive combination, all directed to achieving a single, unlawful end or result. On the contrary, each agreement had its own distinct, legal, illegal end. Each loan was an end in itself, separate from all others. That is exactly what we have here. Each loan that was obtained by these various members of these various conspiracies, I will say, was a separate end in itself. As to Michonne Anquet, the variance issue applies just as much to her, if not more, than to Nancy Wolffeld. She was, as the Your Honors must know, a minor player here. She was categorized as a minor player. She was charged with only two of the transactions of 21 listed in the indictment. She was a closing agent. She was just a closing agent. She had no reason to know about any other fraudulent transactions that were being perpetrated by her alleged co-conspirators, other than those few transactions in which she was involved, even others that her brother was involved in. She had no reason to know, and there was no evidence to trial, zero evidence that showed that she was ever told anything about any other transactions or knew they were going on. They were totally separate transactions. They were separate loans, and she didn't know about them. Why shouldn't we consider them to be part of the same conspiracy? Well, I tried to explain that because they were separate loans. None of them, each individual loan didn't require the cooperation, knowledge, or assistance of persons that were obtaining different loans. They were totally separate and different. There was no overlap between, in other words. All right. I think we understand your point. Why don't you move to your 404B question? Okay. Let me just add one thing about that. As far as prejudice to Michonne, if I might just say one thing really quickly. Well, you're just taking your own time, but go ahead. One area of prejudice in cases like this, the Kodiakis case mentions, is that generally in conspiracy cases, statements made by any co-conspirator can be used against any other co-conspirator. And, in fact, in this case, such a jury instruction was given so that statements of co-conspirators of which she knew nothing and that she didn't even know these people existed were used against her at trial according to this jury instruction. I think we're well aware of that. Okay. 404B. This Court has strict requirements for the admission of 404B evidence. And since 2013, it has reversed at least four cases on the grounds that the prosecution and the trial judge have not laid out the clear prerequisites for admission of 404B evidence. And those prerequisites are that the proponent of the evidence has to have a proper purpose, the evidence introduced has to be relevant to that purpose, and the probative value of the evidence has to outweigh the potential for unfair prejudice. The judge in this case, nor did the government, explain clearly how the evidence that was being admitted of other transactions that it claimed were fraudulent were admitted for any admissible purpose. That is, other than the impermissible purpose of showing character. Is knowledge a non-propensity purpose? Knowledge is a non-propensity purpose. And what about the absence of mistake? That's a proper non-propensity purpose. And isn't your defense that she was just a poor little innocent dupe? Yes. Okay. Basically, if you want to summarize it that way. Isn't she? Take the information about her brother, her brother being able to purchase his property. She certainly, the jury certainly could have inferred that evidence is enough to allow a juror to infer that she should have known that her brother couldn't purchase that property. Well, I'm not. The 404B evidence that was admitted here was evidence of totally separate transactions. So unless Michonne was told or knew that. Well, one of the transactions involved her brother. That's correct. Okay. But that still doesn't, that still doesn't. I don't understand how that shows that she had knowledge that her, that these HUD ones that she was signing were being used by Tim Ricks, who was the only person that testified against her at trial and the only ringleader who she knew. It doesn't show how she would know that those HUD ones were being used by him to defraud institutions, financial institutions. In fact, the evidence was that when Tim Ricks started to engage in this, you know, buying and selling property, flipping properties as they're called, he intended it to be a legal endeavor. He and the government even closed on that. The government admitted that in its closing, that when this whole scheme was started by Tim Ricks, he himself intended that this was going to be a legitimate enterprise. He held himself out to Michonne Enquay as a legitimate real estate investor. He testified at trial that he told her he was a legitimate real estate investor. And so unless that initial 404B transaction somehow showed that she had knowledge that that transaction was an illegitimate or fraudulent one, then the fact that that comes into evidence doesn't show her later knowledge in any way. All right. We'll have you back on rebuttal. We'll hear from Mr. Morimarco. Okay. Thank you. Good afternoon, Your Honors. Glenn Morimarco on behalf of the United States government. I'm happy to start with either issue if the Court wants me to lead. I think the variance issue is probably the more substantial of the two. And if you'd like me to start with that. It's up to you. Sure. On the variance issue, the government wins for three different independent reasons, Your Honors. First, we don't concede that this is a kodiakus issue at all. We think, as Judge Greenaway suggested in his question, this is just like every multilevel conspiracy. It is not a hub and spokes conspiracy. There were people at the top, the middle, and the bottom. I'll go into that in more detail. But even if it is a kodiakus hub and spoke conspiracy, we agree with I think it was Judge Fischer's question that suggested that the facts just don't support that these hubs and spokes didn't know what was going on in the others. And then third, and their biggest problem, quite frankly, is prejudice. There's just no spillover prejudice here. So for any one of those three reasons, the government wins this case on the variance issue. We'd also point out that Ms. Sean Onkay did not raise, I mean, there was a footnote at the end of her brief trying to join all issues, but we contend that this is the kind of issue like sufficiency of the evidence that you actually have to argue in your brief because you have to make an individualized prejudice showing and you have to show how this scheme was charged differently. Will Fell's argument is that it should have been charged as spikes relating to mortgage brokers. I assume that Ms. Onkay would argue that it has to be spikes related to borrowers or title agents or something different entirely. So those arguments haven't been raised. But anyway, any one of the other three arguments would dispose of this case. And the prejudice argument I think is really quite strong here in the absence of prejudice because as Judge Greenaway was pointing out, in any conspiracy you prove the whole conspiracy. And their real point is that there's a lot of evidence about people at the top who didn't, you know, and she might not have known what was going on by the people in the top, even though all the people at the top indicated how intimately she was involved in the conspiracy. But certainly they can't testify about the conspiracy that was charged if they can't say what they pled guilty to and what they did and how they made a profit and how the whole scheme worked. The argument I think needs to be, if they're going to make prejudice, that there was something about the evidence we brought in that wouldn't have come in because it only related to the other spokes. But the theory of the conspiracy about all the extra money that was made applied to every spoke that they allege is here. But getting back to whether or not this is even a hub-and-spoke conspiracy, I just want to go back to Greenage, which is a case that Judge Greenaway tried as a district court judge. It really is very, very close to this situation. And in that case, Judge Greenaway did not give a multiple conspiracy charge that had been requested. So it was a preserved claim. This is a plain error claim. And the Third Circuit held, this court held, that in fact they weren't even entitled to it. And you had exactly the scenario that you have here. You had a recruiter. And you had two recruitees who were arguing that it was not, that there was a variance of trial. And it was also a bank fraud conspiracy. It was a simple stolen check, but not simple. It was a stolen check case where what they were doing is they were altering the checks. They were cashing them. They got straw buyers at the end, just like the straw purchasers here. And then they split the proceeds in various ways. In that case, the court said that it was not a Kodiakus-type conspiracy. It was a pyramidal structure. And that really is pretty much the same structure that we have here, Your Honors. So I think they lose on that level. But then if we go and even if we assume that it's a hub-and-spokes conspiracy,  And Judge Fischer alluded to the Barker scenario, where Barker had four properties that he bought, and Nancy Wilfels only did two of them. The jury was entitled to infer, based on the testimony, the testimony that, I'm forgetting the leader of the name, Mr. Henry. Mr. Henry stated that these had to be coordinated. It wouldn't be successful if they weren't coordinated. These loans were done within six weeks of each other. And so we know for a fact that Nancy Wilfels gave one out to Gil Siegel at Coast Mortgage. The other one was done by Debbie Hanson, who was associated with one of the other conspirators. Okay, but Mr. Siegel wasn't charged. No, he wasn't. And, in fact, we didn't take a position, I suppose, one way or the other. We didn't name him an unindicted conspirator. We didn't name him anything. But their argument loses either way. We never said that he wasn't somebody who was participating in this. But if, as they contend, he was really uninvolved, then it disproves their hub-and-spoke theory, because their theory is, because this was a charged property, and it was, you know, Wilfels got a commission on this, everything in it was fraudulent. So if it could be done without a false mortgage broker participating, then that can't be the spoke that made this what it obviously was, which is part of the conspiracy. It shows more the pyramidal structure that says that nobody is essential to this scheme. The people at the top, obviously, are still the same people. The people doing the false documents are still the same people. And if for some reason you could do this, which I think would be difficult, without a participating mortgage broker, then I think there goes your separate spokes. But we didn't make a contention one way or the other whether he was involved. So we didn't concede. We didn't argue. He did explain, as people typically do, how the industry works. But he certainly was not involved. Well, you argue that the brokers needed to coordinate among one another. But is there any evidence in the case that showed that they did? Well, for the most part, it's inferential. I mean, we do know that Nancy Wilfels brought in Gil Siegel. So we know that he's another broker, obviously. Yeah, but he wasn't charged. Right. Well, the only other one, then, that was relevant was Debbie Hanson. And she did plead guilty. And she didn't know Debbie Hanson. There's no evidence that she knew Debbie Hanson. Yeah, I mean, this was not the way the case was tried, so there's not a lot of evidence about Debbie Hanson that was brought into the case. So this is a theory that arose only on appeal. But the inference, and I think you're allowed, as Judge Roth pointed out, we have to take the evidence in the light most favorable to the government at this stage. And so we're allowed to draw inferences. And inferences from the evidence. Now, again, Henry said in order for this to succeed, they had to coordinate the loans. Henry said that they wanted to do four loans, and they gave, you know, they approached Nancy Wilfels first, and she could only come up with two people. So then she had to go to Post Mortgage for the third, and apparently Ricks and Tarja got Debbie Hanson for the fourth. But the information in the application that Debbie Hanson did was the same information that had been done in the previous ones. For example, they used the same employment verification. That was somebody who was recruited into the scheme by Wilfels. It was someone who was claimed to be her boyfriend, and he said that he only talked to Wilfels about it. So it's a reasonable inference that that information that got to Debbie Hanson probably came from Wilfels as well. Again, there wasn't testimony about this. It wasn't the focus of what the government was trying to prove. This was, you know, this was a commission. She did receive a commission on this loan, but it wasn't the focus of trying to show how much intimate knowledge she had. And our position is that you don't need to show that, and that's what Greenwich stands for. Okay. On the 404B, just briefly, Your Honors, I think actually the strongest argument here is this isn't 404B at all. When you look at the three properties that come in. Did you raise that in the district court? In the district court? We did not, Your Honor. Okay. So can you really raise it here? Well, you can. I don't want to think that we're getting to the point where we need to do harmless error, but if we were to get to that point, we certainly could then. If this is certainly admissible evidence regardless. I feel a little bit embarrassed that I didn't stress this more in my brief. It is in our harmless error section. Let me tell you how this came about, to be perfectly blunt. There was real true 404B evidence in this case against Nancy Wilfels. We were looking at deals that she did that were really prior in time to this conspiracy that explained how the conspiracy started. As to Michonne, these deals were pretty much in the time period of the charged conspiracy dealing with her. It was all thrown into the same motion. We wanted to at least alert the defendants, as we typically do in district court, that we're going to bring to light deals that aren't specifically named in the indictment. But the indictment is broad enough to cover them. I mean, the indictment says it listed 14 specific, no, more than 14, 21 specific properties that we were going to enumerate. But it listed them, and it said, as examples. And it also had on or about language. Two of the four 404B properties were during the charged conspiracy and involved all the same actors here. One of them was two weeks before the on or about start of the conspiracy. So arguably all three were. The one that was two weeks before was actually the original sale of a property that was then properly in the conspiracy. So Duane Onkate bought it two weeks before the on or about start of the conspiracy and sold it a month later during the conspiracy. So this really is part and parcel of the whole conspiracy. But if we need to defer, if we don't go that route, I would just rely primarily on Judge Sanandle's excellent analysis of this case. I mean, there are numerous reasons why this comes in as proper. To show knowledge, to show absence of mistake, to show the M.O., frankly. Again, these were all done in the exact same way. There was a netting here of the proceeds. So it's really very, very standard 404B analysis that Judge Sanandle did. And I didn't really see any reason to deviate from that, frankly, in my brief because it seems so strong. But in preparing for our argument, I was sort of looking at the dates really for the first time and saying, this is all part and parcel of the same scheme. So probably should have been highlighted a bit more and raised a bit more. But it's hard to find error here in light of both the rationale and the time period in which it's charged. On the ‑‑ yeah, I mean, I think if the court has questions, I'm happy to answer more. If not, I'm happy to ‑‑ that's all. Thank you. Thank you, Mr. Marmarco. And we'll hear from Mr. Marmarco. Mr. Donahue. Thank you, Your Honor. My colleague from the United States Attorney's Office stated that to show prejudice, we need to show that something wouldn't have come in if the case had been properly charged. And what I would submit is that, indeed, you would not have had this volume of evidence come in. You know, by the time you get through the transcript of 25 witnesses over 10 days of evidence, you're left with the distinct impression that it's the think tank that's on trial, that what we heard is the case as it was originally prepared, premised on the assumption that, in fact, the think tank was going to be going to trial. Would this be the first opinion of its kind to chide the government anywhere, that they shouldn't put in so much evidence? I mean, it sounds like that's what you're telling us to do, to control the quantum of evidence you put in on a conspiracy. Yeah. Well, no, I think what that calls to mind for me, it's cited in our opening brief a case called Swofford. I believe it's a Sixth Circuit case. And it says, when too much evidence is put in, that alone makes the defendant seem more guilty. And it's true. You can see it on appeal. You know, when you look at this transcript, your first impression is, look at all this evidence. They must have proved the defendant's guilty somehow. But in truth, you can't encourage a jury just to transfer guilt from one co-schemer to another by that manner. So that's the case, I would say. The court has recognized there can be too much evidence in a multi-defendant conspiracy case. This court's decision in Camille is probably similar. Now, what if none of these other co-defendants had pled guilty? Well, then it would be more understandable why this evidence was coming in. But to uphold the conviction as an answer, well, it would have changed what the jury heard. Is it related to your client? Right. And then maybe there would have been more grounds for a motion to sever. But the point is, the error is really the charging error. Okay?  So it's okay for the jury to hear so much about the think tank if, in the end, the government proves up that rim to connect the spokes and to prove the rim. But if it's not a rim, you don't prove the rim. Right. To show there's a rim, you have to show that there's a visual. But in fact, if this is more of a pyramid than a hub and spikes, you don't prove a rim. You prove the pyramid. You prove the think tank on top. You prove the middlemen who are getting the documentation and the money. And then you prove the guys on the bottom who are the straw men and the buyers. Well, this idea of the pyramidal conspiracy, which comes from the Greenidge case, is distinct from the facts here because, in that case, the court stated that it was essential to the scheme that there be many depositors. It just wouldn't have worked without that. So in Greenidge, maybe it worked to call it a pyramid because the co-schemers just had to be aware of these other people's involvement. But that distinguishes Greenidge from this case, that Ms. Singer, the passage she brought to the court's attention from Blumenthal, is apt in that regard, and that when you have a mortgage fraud, there's no reason for a broker, even if she's in on that fraud, to suspect there are any transactions beyond the ones that she's involved in. Those are the ones that are at issue from her perspective. Okay. Mr. Donahue, thank you. We understand your position. Ms. Singer, do you have anything else? Just two very brief points. Okay. The government says that it refers to Judge Simandl's excellent analysis with regard to the reasons for admitting Rule 404B evidence. And I would just say that there literally was no analysis. I quoted what he said in full on page 33 of my brief. I don't need to reiterate it here. But my point, one of my main points with regard to 404B analysis is that there simply wasn't any. All Judge Simandl did was read what was called a litany of proper reasons for admitting 404B evidence without providing what's required, and that is showing that the 404B evidence must fit into a chain of logical inference, no link of which is the inference that the defendant had the propensity to commit the crime charge. And that logical inference reference, or quote, comes from this Court's decision in U.S. v. Himmelright, and it's been repeated in many cases since. Number two, the prejudice with regard to the 404B evidence comes in part, at least, from the very jury instruction that was given on 404B, even if some of those acts, or many of those acts were within the scope of the conspiracy, that is the time period of the conspiracy charge. The fact is that these extra acts, I'll call them that, 404B acts, were always treated as 404B transactions by the government, by the district court, and frankly, by all the lawyers, the defense lawyers who tried this case, following the lead of the government in this case. The jury instruction that was given highlights for the jury that these acts, these 404B acts performed, and I'll say by Mishon, but by the others as well, were extra wrongs. They were additional wrongs. They weren't part of the single wrong, the single conspiracy that was charged, but they were yet additional wrongs. And in fact, part of the jury charge, which can be found on pages 2020 to 2021 of the trial transcript, says the government alleges these were fraudulent transactions. And then it goes on to explain that, you know, why they're being admitted and the jury can consider them for all these other reasons. So there's prejudice just in the jury charge itself. And I don't have anything to say. Okay. Thank you very much. Well, thank you, Ms. Singer. And we thank all counsel for their very helpful and excellent arguments in this case, and we'll take both cases under advisement.